1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL ADAM ASSENBERG, *et al.*,

Plaintiffs,

v.

ANACORTES HOUSING AUTHORITY,

Defendant.

Case No.  C05-1836RSL

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT

This matter comes before the Court on a motion for summary judgment filed by defendant Anacortes Housing Authority ("AHA").  Plaintiffs Michael Assenberg and Carla Kearney, a non-married couple, allege that AHA failed to accommodate Assenberg's disabilities by refusing to allow him to keep snakes or cultivate and use marijuana in his federally subsidized housing.  AHA moves for summary judgment on all claims.  (Dkt. #18).  For the reasons set forth below, the Court grants the motion.[1]

## I.  FACTS

The following facts are either undisputed or, where a dispute exists, it is resolved

---

[1] Because this matter can be decided on the memoranda, declarations, and exhibits submitted by the parties, defendant's request for oral argument is DENIED.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 1

1   in plaintiffs' favor.  AHA is a publicly funded housing authority subsidized by funds

2   from the Department of Housing and Urban Development ("HUD").  AHA provides

3   affordable public housing to low income individuals.

4          AHA owns and operates townhouses in Anacortes, Washington; plaintiffs reside in

5   a three bedroom apartment in a second level duplex (the "Premises").  In April 2005,

6   Kearney, a long-time tenant of AHA housing, sought permission to add Assenberg to her

7   lease.  Assenberg was required to complete a rental application.  In that application, he

8   voluntarily disclosed that he had a disability or handicap, but answered "No" to the

9   question, "Is there any special equipment/needs required due to a disability/handicap?"

10  Declaration of Theresa McCallum (Dkt. #21) ("McCallum Decl."), Ex. D.  Plaintiffs did

11  not inform AHA of Assenberg's marijuana use during the application process because

12  they knew that if they had done so, AHA would not have leased the Premises to them.

13  Declaration of Jeremy Larson (Dkt. #20) ("Larson Dep."), Ex. B (Kearney Dep.) at pp.

14  70-71.  Plaintiffs executed a new lease for the Premises on July 20, 2005 to add

15  Assenberg as a tenant.  McCallum Decl., Ex. E.  Plaintiffs lived in the Premises with

16  Kearney's two children, who were approximately 11 and 9 years-old during the relevant

17  time.

18          In August 2005, another tenant complained that plaintiffs were violating AHA's

19  pet policy by maintaining snakes in their unit.  McCallum Decl. at ¶ 24.  The AHA issued

20  a Notice to Comply or Vacate and Notice of Intent to Evict based on plaintiffs' violation

21  of the pet policy, which prohibits snakes.  Id., Exs. C, H.  In response to the notice,

22  Assenberg claimed for the first time that the snakes were his service animals.  He gave

23  AHA a letter from his physician, Dr. Allan Horesh, stating that Assenberg suffered from

24  depression and the snakes were his "therapy pets."  Id., Ex. I (explaining that Assenberg

25

26  ORDER GRANTING MOTION
    FOR SUMMARY JUDGMENT - 2

1  "derives much comfort and mental benefit from his snakes").  AHA responded that Dr.

2  Horesh's letter did not establish that the snakes were service animals rather than pets.  Id.,

3  Ex. J.  Dr. Horesh wrote a second letter to AHA on September 11, 2005 stating that the

4  snakes were "'service animals'" and "of great therapeutic benefit to [Assenberg] in the

5  treatment of his depression."[2]  Id., Ex. M.

6      AHA agreed to allow Assenberg to keep the snakes for their medical benefits

7  provided that they did not jeopardize the health, safety and welfare of other residents and

8  staff.  AHA allowed him to keep the snakes if he (1) provided a declaration "from a

9  professional of the types of snakes you have is necessary [sic]" and that the snakes were

10 not poisonous or otherwise a danger to others' safety, (2) kept the snakes in a cage when

11 staff was in the Premises or when the snakes were being transported, and (3) agreed to

12 indemnify, defend, and hold AHA harmless for any injury that might result from the

13 snakes.[3]  Id., Ex. N.  Assenberg subsequently informed AHA that one of the snakes was a

14 gopher snake and the other a red tail boa.  He refused to comply with the other

15 conditions, and in an e-mail dated September 14, 2004, he claimed an unlimited right to

16 carry the snakes around with him, including when he paid his rent.  Id, Ex. P.

17     During this time period, Assenberg gave AHA a one-page form, signed by Dr.

18 Horesh, titled "Documentation of Medical Authorization to Possess Marijuana for

19 Medical Purposes in Washington State."  McCallum Decl., Ex. Q.  Assenberg suffers

[2] Dr. Horesh states in a declaration regarding the motion for summary judgment that the snakes also serve as "magnets for heat" that benefit Assenberg.  Horesh Decl. at p. 3.  Dr. Horesh's letters to AHA prior to the litigation did not include that claim.

[3] When Assenberg moved into the Premises, he agreed to abide by AHA's pet policy, which was incorporated into the lease.  McCallum Decl., Exs. C, E.  The pet policy contained an agreement that the tenant would indemnify AHA for any injuries or damage caused by a pet.

1   from extreme pain from a debilitating back injury 21 years ago, and he uses marijuana to

2   alleviate the pain.  Plaintiff's Declaration (Dkt. #30) ("Assenberg Decl.") at p. 3.

3   Assenberg claims that without the marijuana, he has convulsions that are "so bad [that he]

4   pass[es] out from pain many times a day."  Id.  Standard medical treatments and

5   medications are not as effective in relieving his pain.  Assenberg also requested that AHA

6   move him into a four bedroom apartment so he could increase his marijuana cultivation.

7   McCallum Decl. at ¶ 35; Larson Decl., Ex. A (Assenberg Dep.) at pp. 22-23, 26, 28.

8          AHA verified that plaintiffs were growing and using marijuana in their rental unit.

9   By letter dated September 27, 2005, AHA informed Assenberg that using and possessing

10  marijuana were illegal under federal law, so it could not permit him to do so on AHA

11  property.  Id., Ex. R.  In the same letter, AHA denied Assenberg's request to keep the

12  snakes because his need to use them as service animals was not readily apparent or

13  demonstrated, and he had not shown that the snakes functioned as trained service

14  animals.  AHA also noted that snakes "pose a threat to others' health and property," and

15  that plaintiff had refused to provide the information AHA requested about the snakes.

16         On September 30, 2005, AHA gave plaintiffs a Notice to Terminate Tenancy

17  based on their violation of the pet policy and their use and possession of a controlled

18  substance.  McCallum Decl., Ex. T.  Although plaintiffs had the right to contest the

19  termination and request a hearing under AHA's grievance policy, they did not do so.

20  Plaintiffs continue to occupy the Premises with the snakes and marijuana.

21         Plaintiffs filed their lawsuit in state court on October 12, 2005.  On November 4,

22  2005, defendant removed the case to this Court based on federal question jurisdiction.

23  Plaintiffs allege that defendant failed to reasonably accommodate Assenberg's disabilities

24  by failing to grant exceptions to AHA's pet policy and drug policy.  Plaintiffs allege that

25

26  ORDER GRANTING MOTION
    FOR SUMMARY JUDGMENT - 4

1  AHA violated the Federal Fair Housing Amendments Act of 1988 ("FHA"), 42 U.S.C. §§

2  3604(f)(2) & 3604(f)(3)(B); the Americans with Disabilities Act of 1990 ("ADA"), 42

3  U.S.C. § 12132; the Rehabilitation Act, 29 U.S.C. § 794; and RCW 49.60.222.

4                                    **II.  DISCUSSION**

5  **A.    Summary Judgment Standard.**

6            On a motion for summary judgment, the Court must "view the evidence in the light

7  most favorable to the nonmoving party and determine whether there are any genuine

8  issues of material fact."  Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004).  All

9  reasonable inferences supported by the evidence are to be drawn in favor of the

10  nonmoving party.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir.

11  2002).  "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving

12  party, summary judgment must be denied."  T.W. Elec. Serv., Inc. v. Pacific Elec.

13  Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

14  **B.    Analysis.**

15            The FHA makes it unlawful to "discriminate against any person . . . in the

16  provision of services or facilities in connection with [his] dwelling, because of a

17  handicap."  42 U.S.C. § 3604(f)(3)(B).  "Discrimination" includes a "refusal to make

18  reasonable accommodations in rules, policies, practices, or services, when such

19  accommodation may be necessary to afford [a handicapped] person equal opportunity to

20  use and enjoy the dwelling."  24 C.F.R. § 100.204(a).  A plaintiff has the burden of

21  proving four elements: (1) he is handicapped within the meaning of § 3602(h) and

22  defendant knew or should have known of that fact, (2) an accommodation was necessary

23  to afford the handicapped person an equal opportunity to use and enjoy the dwelling, (3)

24  the accommodation was reasonable, and (4) defendant refused to make the requested

25

26

1    accommodation.  Prindable v. Ass'n of Apartment Owners, 304 F. Supp. 2d 1245, 1254

2    (D. Haw. 2003); United States v. California Mobile Home Mgmt. Co., 107 F.3d 1374,

3    1381 (9th Cir. 1997).  Similarly, the ADA and Rehabilitation Act require "reasonable

4    modifications" to policies, practices, or procedures "'when the modifications are

5    necessary to avoid discrimination *on the basis of disability,* unless the public entity can

6    demonstrate that making the modifications would fundamentally alter the nature of the

7    services, program, or activity.'"  See, e.g., Weinreich v. Los Angeles County Metro.

8    Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997) (quoting 28 C.F.R. § 35.130(b)(7);

9    emphasis added in Weinreich).[4]

10          **1.    Modification of the Pet Policy to Allow Snakes.**

11          Assenberg claims that his snakes are service animals and that AHA discriminated

12   against him by failing to make an exception to its pet policy to allow him to keep them.

13   Pursuant to the ADA and FHA, a "service animal" is one "individually trained to do work

14   or perform similar tasks for the benefit of an individual with a disability."  28 C.F.R.

15   § 36.104; Prindable, 304 F. Supp.2d at 1256 (applying ADA definition to FHA claim).  In

16   Prindable, plaintiff claimed that his public housing owner violated the ADA and FHA by

17   refusing to allow him to keep a dog, even though his physician stated that the dog

18   ameliorated plaintiff's depression, anxiety, and dizziness.  The court rejected plaintiff's

19   claim because there was no evidence that the dog was individually trained or possessed

20   abilities "unassignable to the breed or dogs in general."  Id. at 1256-57, 1257 n.25

21

---

22          [4] See also RCW 49.60.222(2)(b) (prohibiting "refus[al] to make reasonable

23   accommodation in rules, policies, practices, or services when such accommodations may

     be necessary to afford a person with the presence of any sensory, mental, or physical

24   disability and/or the use of a trained dog guide or service animal by a blind, deaf, or

     physically disabled person equal opportunity to use and enjoy a dwelling").

25

26   ORDER GRANTING MOTION
     FOR SUMMARY JUDGMENT - 6

1   (rejecting the assertion that a pet can qualify as a service animal if it merely provides

2   "some comfort" rather than performing functions or tasks).  Similarly, in this case,

3   Assenberg never informed AHA that he trained the snakes or that they had any unique

4   characteristics or abilities to qualify them as service animals.  Therefore, Assenberg did

5   not show that the snakes were a necessary accommodation.

6       Despite plaintiffs' assertion, AHA never required that the snakes be

7   "professionally trained, and certified."  Plaintiffs' Opposition at p. 9.  Rather, AHA

8   requested information about the type of snakes and whether they were poisonous or

9   otherwise posed a threat to the health and safety of others.  Because a housing authority

10  may deny a requested accommodation as unreasonable, AHA's request for additional

11  information to assess the potential safety risks was reasonable.

12      Furthermore, plaintiffs must show that AHA *refused* to make *reasonable*

13  accommodations.  See, e.g., Prindable, 304 F. Supp.2d at 1258 (citing 42 U.S.C. §§

14  3604(f)(3)(B); 42 U.S.C. § 3613(a)(1)(A), 3613(c)(1) and California Mobile Home, 107

15  F.3d at 1380).  AHA allowed Assenberg to keep the snakes if he provided additional

16  information about them and kept them caged when around others.  Assenberg has not

17  shown that those requirements were unreasonable or that they conflicted with his medical

18  needs.  To the extent that Assenberg claims a right to maintain or carry the snakes

19  throughout the Premises without limitation, he has not shown that such an

20  accommodation was necessary.  Moreover, "[u]ntil an accommodation request is denied,

21  there is no discrimination" and no cause of action.  Prindable, 304 F. Supp.2d at 1258.

22  Even after Assenberg refused to provide the requested information or agree to any limits

23  on the snakes, AHA allowed plaintiffs to keep the snakes until it learned that plaintiffs

24  were using and possessing marijuana on the Premises.  AHA had no duty to

25

26  ORDER GRANTING MOTION
    FOR SUMMARY JUDGMENT - 7

1   accommodate an admitted illegal drug user.  42 U.S.C. § 3602(h) (definition of

2   "handicap" under the FHA does not include current, illegal use of a controlled

3   substance); 42 U.S.C. § 12210(a) (the term "'individual with a disability" does not

4   include an individual who is currently engaging in illegal use of drugs, when the covered

5   entity acts on the basis of such use"); 29 U.S.C. § 705(20)(C)(i) (same).  Accordingly,

6   plaintiffs have not shown that AHA denied Assenberg a reasonable accommodation.

7           **2.**     **Modification of Illegal Drug Policy to Allow Medical Marijuana.**

8           Plaintiffs also argue that AHA was required to accommodate Assenberg by

9   allowing him to use and posses marijuana in the Premises.  Assenberg's possession and

10   cultivation of marijuana violated the Controlled Substances Act ("CSA"), 21 U.S.C. §§

11   841(a)(1) and 844(a) (criminalizing the use and possession of controlled substances as

12   defined by the CSA).  Furthermore, Assenberg's use and possession of marijuana renders

13   plaintiffs ineligible for federally subsidized housing pursuant to their lease,[5] HUD

14   regulations,[6] and federal statutes.  <u>See, e.g.</u>, 42 U.S.C. § 1437d(1)(6) (requiring public

15   housing leases to state that any drug-related criminal activity during the lease term shall

16   be grounds for lease termination); 42 U.S.C. § 13661(b)(1)(A) (prohibiting public

17   housing owners from admitting users of illegal drugs); 42 U.S.C. § 1437a(b)(9) (defining

18   "drug-related criminal activity" to include illegal manufacture, use or possession of a

19   controlled substance as defined by the CSA).

20           Plaintiffs nevertheless argue that their activities were legal because Washington

21

22         [5] McCallum Decl., Ex. E (Crime Free/Drug Free Rental Addendum which

23   prohibits activities that violate the CSA including manufacture, possession, and storage of a controlled substance), Ex. F at ¶¶ 5, 20 (plaintiffs' lease, which they signed, prohibits

24   "drug-related criminal activity on or off the premises").

25         [6] 24 C.F.R. § 5.854(b)(1); 24 C.F.R. § 960.204(2)(i);  24 C.F.R. § 966.4.

26   ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 8

1  Initiative 692 ("I-692"), codified at RCW 69.51A.005 *et seq.*, provides an affirmative

2  defense to state criminal prosecution for medical use of marijuana.  Plaintiffs argue that

3  in 21 U.S.C. § 903, Congress disavowed an intent to occupy the field on the issue and left

4  discretion to the states "unless there is a positive conflict" between the federal and state

5  laws "so that the two cannot consistently stand together."  Plaintiffs argue that there is no

6  conflict between the CSA and state law.  They also note that the state statute provides

7  that the medical use of marijuana shall not result in the forfeiture of property.  RCW

8  69.51A.050.  However, to the extent that the state law legalizes marijuana use and

9  prohibits the forfeiture of public housing, it conflicts with the CSA and the federal

10  statutes and regulations that criminalize marijuana use and prohibit illegal drug use in

11  public housing.  Interpreting I-692 as plaintiffs suggest would also undermine the federal

12  laws' goal of providing drug-free public housing.  Moreover, HUD has interpreted its

13  regulations to preempt state medical marijuana use laws, and the Court defers to HUD's

14  views on that issue.  <u>See, e.g.,</u> <u>Grill v. Costco</u>, 312 F. Supp.2d 1349, 1352 (W.D. Wash.

15  2004) (deferring to Justice Department's interpretations regarding service animals in

16  public accommodations because it was charged with issuing, implementing, and

17  enforcing applicable regulations).  In addition, the Supreme Court has upheld Congress's

18  authority under the commerce clause to enact the CSA and prohibit the intrastate use of

19  marijuana, even when that use complies with a state's medical marijuana law.  <u>See</u>

20  <u>Gonzales v. Raich</u>, 545 U.S. 1, 50 (2005) (analyzing California's law).

21         Plaintiffs also argue that a medical necessity defense exists under the CSA and

22  applies in their case.  The Supreme Court, however, explicitly held that there is no

23  medical necessity exception to the CSA.  <u>United States v. Oakland Cannabis Buyers'</u>

24  <u>Coop.</u>, 532 U.S. 483, 491 (2001) ("we hold that medical necessity is not a defense to

25

26  ORDER GRANTING MOTION
   FOR SUMMARY JUDGMENT - 9

1  manufacturing and distributing marijuana").  Although plaintiffs attempt to distinguish

2  that decision on the grounds that plaintiffs are users, not distributors, the Supreme Court

3  foreclosed that argument:

> Lest there be any confusion, we clarify that nothing in our analysis, or the statute, suggests that a distinction should be drawn between the prohibition on manufacturing and distributing and the other prohibitions of the [CSA]. Furthermore, the very point of our holding is that there is no medical necessity exception to the prohibitions at issue, even when the patient is "seriously ill" and lacks alternative avenues for relief.

  Id. at n.7.  Accordingly, plaintiffs' use and possession of marijuana were illegal under

federal law.  Because Assenberg was an illegal drug user, AHA had no duty to

accommodate him.  42 U.S.C. § 3602(h); 42 U.S.C. § 12210(a); 29 U.S.C. §

705(20)(C)(i).[7]  "Reasonable" accommodations do not include requiring AHA to tolerate

illegal drug use or risk losing its HUD funding for doing so.  McCallum Decl. at ¶¶ 10,

39.

        Finally, plaintiffs argue that AHA violated a statement in a HUD memorandum

that housing owners "should consider all relevant factors in determining whether to

terminate the tenancy" based on the use of illegal drugs.  Declaration of Harlan Stewart

(Dkt. #19) ("Harlan Decl."), Ex. A at p. 4.  Even if plaintiffs had pled a procedural due

process claim, which they did not, their argument fails.  In addition to the fact that the

internal memorandum suggests that the owners *should*, not must, consider factors,

plaintiffs have not cited any statutory or regulatory authority requiring the consideration

---

    [7] Although the relevant Washington statute does not define "disability," Washington courts look to federal law to interpret its statute.  See, e.g., Clarke v. Shoreline School Dist. No. 412, 106 Wn.2d 102, 118 (1986).  Washington's statute, like the ADA and FHA, only requires "reasonable" accommodation, and therefore does not require entities to violate federal law as an accommodation.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 10

1    of factors relevant in this case.[8]  Furthermore, plaintiffs' claim is undermined by

2    <u>Department of Housing & Urban Dev. v. Rucker</u>, 535 U.S. 125, 129-30 (2002), in which

3    the Supreme Court held that a public housing authority has discretion to terminate a

4    tenancy for *any* illegal drug use.  <u>See also</u> 42 U.S.C. § 1437(d)(1)(6) (vesting "local

5    housing authorities with the discretion to evict tenants" for any drug activity).

6        In sum, the Court finds that AHA did not fail to reasonably accommodate

7    Assenberg's disabilities.  Because Kearney's claims are derivative of Assenberg's claims,

8    her claims also fail as a matter of law.

### III.  CONCLUSION

10        For the foregoing reasons, the Court GRANTS defendant's motion for summary

11    judgment (Dkt. #18).  The Clerk of the Court is directed to enter judgment in favor of

12    defendant and against plaintiffs.

14        DATED this 25th day of May, 2006.

17        *Robt S Lasnik*

              Robert S. Lasnik

18        United States District Judge

---

23       [8] The memorandum only requires owners to consider "evidence of successful rehabilitation or current participation in a supervised drug rehabilitation program." Harlan Decl., Ex. A.  Assenberg did not participate in any rehabilitation program and continues to use marijuana.

26    ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 11